### WEBSTER & LEWIS v. MAFFETT & LEACH. (No. 497.)

Court of Civil Appeals of Texas. Waco. March 24, 1927.

1. Principal and agent ⬅123(9)—Evidence held to sustain finding that principal, sued jointly with agent on check, authorized its execution.

In action on check against person signing as agent and his principal, evidence *held* sufficient to sustain finding that person named as principal authorized agent to sign his name to check, or agreed with him to become liable for amount thereof.

2. Appeal and error ⬅1001(1)—Finding of jury, supported by evidence, will be sustained on appeal.

Where there is evidence to support finding of jury, court will, on appeal, sustain such finding.

3. Bills and notes ⬅54—Principal held liable on check executed in his name by agent, where agent's act was authorized.

Where person, whose name was signed to check as principal, authorized agent to sign his name thereto or agreed with agent to become liable for amount of check, principal was liable thereon.

Appeal from Limestone County Court; H. F. Kirby, Judge.

Suit by Maffett & Leach against J. W. Webster and W. M. Lewis, individually and

as partners. Judgment for plaintiffs, and defendant first named appeals. Affirmed.

Rennolds & Rennolds, of Mexia, for appellants.

L. W. Shepperd and Wm. Kennedy, both of Groesbeck, for appellees.

STANFORD, J. This suit was originally instituted in the justice's court by appellees to recover of J. W. Webster and W. M. Lewis, individually and as partners, the sum of $195.15, the balance due appellees on a certain check for the sum of $1,029.15, signed, "J. W. Webster, by W. M. Lewis." Appellant J. W. Webster denied liability on said check, alleging that W. M. Lewis had no authority to sign his name to said check, and denied partnership with W. M. Lewis under oath. After trial in the justice's court the case was duly appealed to the county court, where on the trial, in response to special issues, the jury found:

"(1) The defendant J. W. Webster did authorize the defendant Lewis to sign his name to the check for $1,029.15, or he did agree with said Lewis to become liable for the amount of said check.

"(2) The defendants Lewis and Webster were partners in the enterprise of dealing in cattle at the time of the execution and delivery of said check, or said parties did have an agreement whereby the said J. W. Webster was to share in the profits or sustain a part of any losses that might be incurred by reason of the purchase of said cattle from plaintiffs Leach and Maffett.

"(3) The defendant J. W. Webster did ratify the action of defendant Lewis in signing his name to the check for $1,029.15 subsequent to the execution and delivery thereof.

"(4) W. M. Lewis did purchase cattle with checks signed 'J. W. Webster by W. M. Lewis,' for some time prior to the giving of the $1,029.15 check in controversy.

"(5) Maffett and Leach did know of and did rely upon this fact, in accepting the $1,029.15 check in controversy for their cattle."

On said findings the court entered judgment for appellees for the amount sued for against both appellant J. W. Webster and W. M. Lewis, who has not appealed.

[1] Under his first assignment appellant Webster, the only party appealing, contends the evidence is not sufficient to support the finding of the jury to the first special issue. The record discloses that W. M. Lewis bought a bunch of cattle from appellees Maffett and Leach, and gave them a check therefor for $1,029.15, which he signed, "J. W. Webster, by W. M. Lewis." Lewis shipped said cattle to market and sold same at a loss, and after paying the proceeds received by him from such sale on said check, there was a balance

of $195.15 still due on said check, to recover which balance the appellees filed this suit and obtained judgment for said balance against appellant Webster and Lewis. W. M. Lewis testified as follows:

"I told Mr. Webster I was fixing to load a bunch of cattle, and I wanted him to O. K. a check for me until I could go to Fort Worth and back. He said it looked like Nobles Graves would do that for me, but I said, 'You have been backing me, and he would still want you to, and if you didn't it might look to Mr. Graves like I was trying to do some crooked business.' I told him when the cattle were sold the money would be in the bank at Groesbeck. Then he told me to be particular about weighing the cattle, as I had a loss on some others, and for me to go ahead. Yes, sir; after I told him the money would be in the Groesbeck bank he told me to go ahead. * * * You asked me if he authorized me to sign his name to that check, he told me to go ahead. I had been using his name, and he told me to go ahead; he did not tell me to sign his name, or not to sign his name. I had bought 30 or 40 cars like I made this transaction. * * * Yes, sir; I signed this check in question just like I'd been signing them for the past three years, and he never complained before. This is the only one I ever had any trouble with. I'd bought 30 or 40 carloads of cattle in the last three years and signed Webster's name just like I did this one, and he paid all of them except this check."

Johnnie Rogers testified as follows:

"The next day after the cattle were shipped I went out to see Mr. Webster (me and Ty Kennedy) about this check that Mr. Lewis gave Mr. Maffett. He said the check was as good as gold, and he authorized him to give it. * * * Mr. Webster told us he told Lewis to give the check, and that it was as good as gold."

[2, 3] Ty Kennedy testified substantially as did the witness Rogers, as stated above. Appellant is the only witness who denied specifically that Lewis had authority to sign his name to said check. Where there is any evidence to support a finding of a jury, it is the duty of this court to sustain such finding. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696, and cases there cited. In this case, not only is there evidence to support the finding of the jury to the first special issue, but we think such finding is supported by the great preponderance of the evidence. The jury having found that appellant authorized W. M. Lewis to sign his name to said check, and said finding being amply supported by the evidence, such finding required the rendition of judgment against appellant, and all other questions raised by appellant become unimportant.

We have examined all of appellant's assignments, and, finding no reversible error, affirm the judgment of the trial court.